Good morning, Judge Livingston, Judge Jacobs, Judge Parker, my name is John LaDuca and I appear to be a plaintiff appellant in this matter. I would first like to address our de novo application of the motion to dismiss the malicious prosecution complaint. It is the plaintiff's position that the defendants never had probable cause or reasonable cause as defined in the New York CPL section 70.10 subdivision 2 absent any evidence that the plaintiff did not work the half hour overtime that she added to her time card. The prosecution of the plaintiff in this matter violated a clearly established statutory right that she had under federal law, the Fair Labor Standard Act, to be paid for time that she worked and earned. Well, hypothetically, suppose after her supervisor had authorized her payment for a given week or two-week period, she habitually went in and added 10 hours of overtime that she actually worked. And at the end of several months, she had gone an additional $25,000 in salary. Is that honest? Just as a first crack. Your Honor, we have not contended that it violated the employer's policy. The fact that the...take the...yes, is it honest? I'm saying...stealing the money? No. Because what she's doing is, what she's doing is, she is working for money under circumstances in which her work was not authorized. Well, Your Honor, I believe that that matter, as we've cited in Chau, has been resolved. In this case, we have a secured facility. It's not like the employer didn't know that the employer had an actual knowledge of her presence on the work premises. And so how come the supervisor came up with a number of hours that's different than what it ended up being after she altered the time schedule? Well, she did work actual full hours of overtime. She added one half hour of overtime on four separate occasions over a two-month period to her time schedule at the end of the week because, as she said in her testimony, that she was being harassed by other corrections officers for asking for that half hour of overtime, which I believe the employer, Lieutenant Ruger, in his testimony in the grand jury said the employees were working as a courtesy to the fellow COs. In a sense, it was, but it was a benefit to the employer who had to have mandated functions completed in the jail. For example, the count, which had to be the prisoner count twice a day, and also the lockdown and all these other things. And this was the only time the plaintiff said she asked for the additional half hour of overtime is when she was requested to do work that other COs were scheduled to do, and then she added the half hour of overtime. You're not disputing that there was evidence before the grand jury that a work policy was violated, that she should have shown the time record to the sergeant and had him initial it? Not at all, Your Honor. Wasn't there also, though, evidence before the grand jury that she didn't work on those days? Absolutely none, Your Honor. I submit there was absolutely none. Of the 12 witnesses called in the grand jury by the prosecutor, not one was asked if they had any knowledge of her not working that day, nor did any one of them testify that she didn't work on those days. In fact, the sergeant in his deposition, Sergeant Gridley, who was the head of the sergeant, said that she did. In all probability, if you look at her card, she did work those days. There's no question she violated the employer's policy. She was sanctioned the maximum penalty under Article 75 of 60 days suspension, on top of the year and a half that she was suspended prior to the hearing, short of being terminated. So that what we're saying here is that, and Judge Jacob, I believe you were sat on a court in Chow and talked about the fact, in that case, the nurses worked at a hospital for an employment agency, Gotham, and the employer had no knowledge, but I think in that decision, the whole thing about work, what is work, it's a loss of time by the employees. It's a benefit to the employer. And if it's to be corrected, it's the employer who has the obligation to change what's happening. They knew what was going on. Without a doubt, they knew. And this is the other thing, Your Honors. This investigation was conducted by the highest level employees of two divisions of the Yates County Sheriff's Department. The jail division by Lieutenant Ruger, a 22-year veteran. The criminal division by Lieutenant Soter, a 22-year veteran. Being overseen by the undersheriff Gleason, a 35-year veteran who was reporting directly to the sheriff in this matter. And, you know, if they're going to arrest one of their own, get it right, they should have known, at a minimum, to charge an employee for stealing time, you've got to prove they didn't work. If you can't prove they didn't work, how are you going to establish the crime here? Well, hypothetically, if I go into a Walmart and I go to a cash register and I start, I spend a couple of hours doing checkout, and then after what I put in for it, claim I'm an employee and I want to be paid, I'm stealing from Walmart, even though I'm working, am I not? No, you're not, Your Honor. You're working. You're earning that money. You've earned that money. You've spent it. Your argument requires you to give that answer to my hypothetical. Yes. Now I want to talk about the grand jury here, because the grand jury presentation took place nine months after this arrest, so they had plenty of time to get this investigation straight during that period of time. And as I said, there were 12 witnesses called and not one, but how did they get rid of the pink elephant in the room, so to speak, the fact that there was no evidence that Fox didn't work the time? And I want to also point out, before this matter went to the grand jury, I sent a letter to the DA, a two-page letter and a supplemental letter, outlining the exact duties that Fox did on each of the four days, and 13 witnesses that saw her working on those days. Of those 13 witnesses, I believe three were called by the prosecutor. So witnesses would know whether she worked an additional half hour on a day when she already worked eight? No, she worked the full eight hours on those days, Your Honor, but she was either asked to come in early, or in one instance I think it was to stay late, and what happened is when she went in- Witnesses would know that she was there earlier, that she was there earlier. Absolutely. She gave the names of 13 witnesses in this letter that I sent to the DA on February 28th. Yes, Judge. But let me accept your argument that she had winning valid defenses to the charges. What's your argument that the information that the grand jury heard, which is that the procedure was for the supervisor to sign time clocks, the supervisor did, and then they were changed afterwards. Precisely, Your Honor. What is your argument that that, in and of itself, did not supply probable cause, which is all we're talking about at this point? Correct, Your Honor. What the prosecutor did is called two high-level key witnesses. One was the head of payroll and a confidential assistant for the whole sheriff's department, who went into grand jury and said, absent approval on that time card, she's not entitled to the pay. That's a legal conclusion, and the prosecutor never intervened to stop that testimony, which was repeatedly asked. And grand jurors and the prosecutor said, but what if her time cards support the fact that the time on the card supports this half hour? Then comes Ruger with this rule, okay, this jail rule, which they enhanced. Because the jail rule only says that an employee below the rank of sergeant must get approval on the card. It doesn't say, if you don't get approval, you're not entitled to the pay. And in fact, that whole rule that was produced, which was certified by Gleason, who drafted that rule and three subsequent revisions of that rule, the last of which I think is important because in paragraph five of the last rule, it specifically says that under the Fair Labor Standard Act, employees who work overtime beyond at the minimum amount of time are entitled to be paid. And had that rule been given to the DA, she may have, the light metal went on. Hey. You've reserved three minutes. I'm sorry. Thank you. You're good. That's quite all right. Good morning. The first point I wanted to cover was the appeal from the discovery order. I don't believe that the appellant in this case has met their burden that Judge Payson abused her discretion in determining that the grand jury instruction should be turned over. So at the time the grand jury was convened, did your client know that she had worked these hours? No, Your Honor. As a matter of fact, I think I basically disagree with the whole premise of the plaintiff's appeal, and that's not whether she worked the hours or not, but whether there was probable cause to prosecute this case. And when you look at the proof that was provided to the grand jury, it not only, and this will address the question that you asked, it not only included the fact that she admitted that she surreptitiously added a half hour on four different occasions. There was suspicion, there was more, but there were four that she admitted to. But that when they looked at the documentary evidence that was provided by the jail, she wasn't doing what she claimed she was doing at the time she was supposedly working. She testified before the grand jury that on September 4th she had to stay over because there wasn't anybody there to relieve herself, but later in an affidavit, which is part of the record, she said that the overtime actually occurred on September 3rd because she got there early and was provided keys. And that was only in the face of the jail logs, which showed that she finished at 3 o'clock checking the trustee dorm, which was the last official duty that she would have engaged in that night. Her time clock showed that it was 3 out of 6, but she tried to explain that by saying that the time card was off. But when you look at the last thing that she did, which was check the trustee dorm, she wrote out that she was finished at 3 o'clock and then attempted to change that. But none of that was apparent at the time that the grand jury was convened. And the grand jury was convened and then adjourned based on a request made by Plano in order to provide documents and evidence that she thought would have. You say none of this was apparent when the grand jury was convened on that day? Well, as part of this litigation, she signed an affidavit or a declaration saying that in her grand jury testimony she testified that on September 4th she was forced to work over. And that's what caused the additional half hour overtime that she added after her time card was checked and signed off by her sergeant. However, during the course of this litigation, she made another excuse saying that it wasn't actually the 4th, it was the 3rd. And I think that was in light of the documents that were provided by the jail and that she foiled. But that doesn't bear on what your client knew and presented to the grand jury. Well, my client didn't present anything to the grand jury, the district attorney did. And the district attorney did a separate investigation in which she not only questioned witness but also had documents that rebutted what she was told by the plaintiff and what was represented to her. So your position is that your adversary is incorrect in saying that the only evidence before the grand jury that went to the issue of probable cause is the violation of the work rule. But there was also evidence before the grand jury that suggested that she was not working the extra half hour on these dates, September 3rd, September 17th, September 23rd, and August 16th. Yes, that's it. And did Christine DiRisio, was she one of the witnesses before the grand jury? They change their name so often. I don't believe she was, Your Honor. But to get back to that, the issue isn't whether the plaintiff was guilty or innocent. The issue here is whether there was probable cause to issue an indictment. And I believe that the district attorney, based on her own independent investigation and based on the proof that was presented to the grand jury, properly got an indictment. And that was agreed to by the trial court because there were several pretrial motions made during the course of the criminal action. And during the course of those pretrial motions, one of them was a motion to exclude evidence which the court denied after holding a hearing, and the other one was to dismiss the indictment as being insufficient on its face and based on improper evidence. And the court also denied that, making a finding that there was probable cause. So based on that, the case went forward. So I believe that there was sufficient probable cause, and that would be sufficient to defeat the case for malicious prosecution. Now, I don't know if you have any questions about the discovery ruling by Judge Payson. I'd be happy to address those. But I believe that the judge did not abuse her discretion, that she held the plaintiff to the standard that's been applied by this court many times, that there has to be a strong showing of need and that they didn't need that. As a matter of fact, Judge Payson said that there was no showing, that it was basically a fishing expedition. And I'll use my last time to address the gender discrimination issues. The plaintiff claims that because she was a woman, she was discriminated, and there's no question that she falls within a protected class because of her gender. But the plaintiff's claim was that she was unable to apply for jobs or fail to apply for jobs because of a pervasive attitude of discrimination that permeated the Yates County Sheriff's Department. However, when she was asked about, first of all, the plaintiff is a civil servant. She had to pass a civil service job in order to be appointed as a corrections officer. She passed that. But there are separate exams for sergeant and for court officer, and she never took those exams, never applied for a position, never expressed any interest in any of that. I believe her argument is that the atmosphere throughout the Sheriff's Department was such that she was unable to do this because it would have been pointless, and I point to that. In addition to the discrepancy about the third and the fourth that you told us about, was there any other evidence presented to the grand jury that she did not work the hours that she had submitted? Yes. What was that evidence? Well, on the 17th, she said that she was asked to cover the lawyers' conference room because the corrections officer who was assigned there had to run an errand or I forget exactly what her excuse was. However, on that day, and she identified the inmate and identified the activity that was going on. It was an inmate meeting with his minister. However, on that day, the inmate wasn't removed from his cell and taken to the lawyers' conference room until 2.55, according to the records that were provided to the district attorney. The plaintiff's testimony was that when she arrived that day and that she traditionally arrived early and was handed keys and everything, was that when she arrived that day, which was about 2.39 or 2.41, sufficient time to give her an extra half hour if she actually did work, that she was asked by this officer to cover the lawyers' conference room because there was a meeting between this particular inmate and his minister. On one hand, you have the plaintiff's version of, I was asked to do this. On the other hand, you had a document that showed that the inmate wasn't removed from his cell and taken to the lawyers' conference room. And the plaintiff's version was the version she presented to the grand jury? Yes. And the evidence that you averted to the document, the evidence that seemed to have called that into question, was also presented to the grand jury? Yes. To return to that, I don't mean to get off topic or anything like that, but to return to the gender discrimination, I would just like to point out that the sergeant and the court officer's exams are also civil service exams that require testing, which the plaintiff never took. And on the other categories, I'll rely for those mostly on our brief, but she listed a number of them that she never showed any interest in or didn't have any openings during the entire tenure of when she worked there. And others, one that she was too old for, another one that wasn't an appointment made by the Yates County Sheriff's Department. So based on that, I don't believe that she's established a prima facie defense to her. I see my time is up. Thank you, Your Honor. Okay. Will he rebut? Yes. First of all, I don't believe I answered your question completely, Judge Parker, and that is that there was no probable cause by the fact that she added this time at the end of the week. If you work the time, you're entitled to the time no matter when it's added to the time card. It certainly was not in compliance with the employer's policy. Wasn't the grand jury entitled to discount your client's testimony once the records that may have contradicted it were also put before the grand jury? And that's exactly our point here, Your Honor, that most of that testimony except for the one point that he made, and that was that you have to remember the grand jury proceeding was nine months after these events took place. My client didn't have any discovery or anything. She was going by memory. She was watching an inmate, but the inmate she was watching, who was Figueroa, who went back when Jarvis was brought there, she told the grand jury it was Jarvis. The real question is not what inmate. Was she working? That's the question. Isn't the real question this? She goes into the grand jury, and one of the issues was whether she worked the time in question. Absolutely. Then she comes into the grand jury and gives the version, gives her position, which is that, you know, I was watching an inmate in the interview room, and I was doing this or I was doing that, and that tended to show that she actually worked. Then the government or the people come in with documented evidence, what have you, that directly calls that into question. Except this, Your Honor, because— Why wasn't the grand jury entitled to say, well, okay, there seems to be— there is evidence that we don't believe is appropriately controverted that she didn't work this time. Why isn't that within the grand jury's providence? It is within the grand jury providence. If what they're telling the grand jury is true. And like Judge Livingston asked about DiRizzo, yes, she was a witness in the grand jury, but you know what she was asked? My client on that day said she did the lockdown. DiRizzo was asked, what did you do? I did the count. Well, unless the—and my client gave a long explanation in the grand jury of the function of a lockdown, and if you're asking this witness a completely different question on what you did that day because they know she did the count because there's a count sheet and somebody signs it, and Ruger was providing this stuff to them. No, your client, if I understand the testimony correctly— So it's deceptive. —went into the grand jury and said that on a particular day— Yes. I was watching an inmate in the attorney's conference room, and I was there for half an hour, and that's why I put the half hour in. Right. The government introduces a document showing that the inmate was in his cell at that time. So why isn't that—I mean, it may not be dispositive. It may—ultimately, you won at trial. But why isn't the government—I mean, why isn't the grand jury entitled to say, we reasonably believe that an offense may have been committed? If the grand jury was not given misleading information, there was information that another inmate— But the real issue really came down to, in our opinion, is that they were telling the grand jury a contrived crime, and that is that she was not entitled to the money because she didn't get approval. And that's why we wanted to charge, because this was the theory from beginning to end, this misstatement of law. And that's what the grand jury— I asked Ruger, how is getting your time cards wrong? And he tells this grand jury because she falsified that time she added to her card. She false—she gave a false statement as to the hours she worked. She falsified business records. She falsified official documents of the department. She falsified business records. The ultimate issue in this case was given to the grand jury by these witnesses and never corrected by the district attorney. It wasn't these— Yes, thank you. Thank you both. We've read the briefs carefully. We appreciate your arguments. Thank you. Thank you both. And we will reserve decision.